(C. D. 477)

ROBERTS MFG. CO. v. UNITED STATES

United States Customs Court, First Division

(Decided April 25, 1941)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before BROWN, WALKER, and EVANS, Judges

EVANS, Judge: This is an action wherein the importer seeks to recover certain amounts of money claimed to have been unlawfully assessed on an importation of merchandise designated on the invoice as tennis ball covers, which was imported from England and entered at the port of Los Angeles. The collector classified the merchandise as manufactures of wool, and assessed duty at 50 per centum ad valorem under the provisions of paragraph 1120 of the Tariff Act of 1930. The protest claims that the merchandise is dutiable at 20 per centum ad valorem under paragraph 1502 of the same act, or by timely amendment thereto, at 30 per centum ad valorem under paragraph 1502 of the Tariff Act of 1930. The respective provisions of the act, so far as they relate to the commodity, are as follows:

PAR. 1120. All manufactures, wholly or in chief value of wool, not specially provided for, 50 per centum ad valorem.

PAR. 1502. Boxing gloves, baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), and all clubs, rackets, bats, golf tees, and other equipment, such as is ordinarily used in conjunction therewith, all the foregoing, not specially provided for, 30 per centum ad valorem; ice and roller skates, and parts thereof, 20 per centum ad valorem.

At the hearing the attorney for the importer made the following introductory statement:

The merchandise the subject of this protest was classified as manufactures of wool at 50 per cent under paragraph 1120 of the Tariff Act of 1930. It is claimed to be properly dutiable at 20 per cent under paragraph 1502 as tennis balls, or balls finished or unfinished, which is the rate or duty to which the trade agreement reduced the tariff rate; that is, the Trade Agreement with Great Britain. We also contend that the merchandise is dutiable at 30 per cent under paragraph 1502 which is the normal rate specified in that paragraph for balls, including tennis balls, finished or unfinished. We contend that the merchandise in this importation should be classified as balls, or tennis balls, unfinished.

The trade agreement to which reference is made is published in T. D. 49753, promulgated November 28, 1938. Said trade agree-

ment makes four changes in the rate as provided in paragraph 1502, *supra*, the first two of which are as follows:

| Tariff Act of 1930, paragraph | Description of article | Rate of duty |
|---|---|---|
| 1502 | Lawn-tennis and table-tennis balls and golf balls_____ | 20% ad val. |
| 1502 | Footballs and other balls, finished or unfinished, not specially provided for, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), except balls wholly or in chief value of rubber. | 20% ad val. |

The other changes are immaterial here.

It is noted that the trade agreement provides a rate of 20 per centum ad valorem for lawn tennis balls but it carries no statement with reference to any rate for unfinished tennis balls. Having provided for lawn tennis balls *eo nomine* there could be no claim under the second provision (quoted above) in the trade agreement with relation to this merchandise for other balls, finished or unfinished, not specially provided for, because lawn tennis balls have been specially provided for. This change in the language of paragraph 1502 indicates a clear intention not to reduce any rate with relation to lawn tennis balls unfinished. So far as the importer may make any claim under the trade agreement, the same is hereby overruled.

The merchandise consists of flat elliptical strips of woolen fabric somewhat compressed through the middle so as to fit when properly joined to and around a ball. They are covered with a dark substance on what is intended to be the inner surface, which undoubtedly is a gum that causes the cover to stick when properly attached to a ball. An experienced manufacturer, the inventor of this type of ball, who imported the merchandise, testified that a tennis ball is made up of two parts, the center portion which is a rubber ball that contains a certain amount of air at a fixed pressure and woolen strips like the imported merchandise in exhibit 1 herein, which strips constitute the covering of the tennis balls.

Illustrative exhibit A consists of two of the imported articles separated from a package. The only difference between the imported ones and illustrative exhibit A consists of the fact that they have been stamped with a trade name. Illustrative exhibit C illustrates a number of the strips, the edges of which have been coated with a cement that is used in gumming the two strips together to form a so-called seam, when the woolen covering has been pressed upon the inner core, or rubber ball.

A number of exhibits illustrating the different processes in the course of manufacture were introduced and the testimony indicates that these strips are subjected to pressure so as to attach them in the proper manner to the rubber core or ball, after which they are roughed

up by a mechanical process, when they are ready to be sold as balls.

It was admitted by both parties that the component material of chief value in the imported merchandise is wool.

An effort was made to have the expert witness testify that exhibits 1 and also A, the two flat oval strips, each constitute an unfinished tennis ball. Objection to that question was made and properly sustained because that is a legal question for the court to determine. Then an effort was made to have the witness say that in the trade and commerce of the United States the exhibits would be considered an unfinished tennis ball. The answer to that question was as follows:

A. I would say a tennis ball is composed of two parts, and either part is an unfinished ball. The cover is unfinished; it is an unfinished ball.

Webster's New International Dictionary, second edition, defines a ball as follows:

ball: A spherical or ovid body of any substance or size used to play with, as by throwing, knocking, kicking, etc.

We agree with the witness' testimony that a tennis ball consists of two parts, the rubber center called the core, which is a ball, and the covering. A physical examination of exhibit 1 in evidence, the imported merchandise, shows them to be flat strips as heretofore described. How can it be said that they are balls, either finished or unfinished? They are a manufactured substance and by agreement are composed in chief value of wool but in no sense are they balls, either finished or unfinished. The best that could be claimed for them is that they are parts of tennis balls and there is no provision in the paragraphs under which claim is made for parts of tennis balls.

Aside from any question of qualification of the expert witness to testify on commercial designation, the evidence is clearly against the contention. This case falls squarely within the holding of the *May Co.* v. *United States*, T. D. 46650, wherein this court held that leather cases are parts of footballs, rather than unfinished footballs.

We therefore find that the importer has failed to make out a case. Judgment will be rendered for the defendant. It is so ordered.