(C.D. 4002)

EDDYCO, INC.
W. J. BYRNES & CO. OF NEW YORK, INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 23, 1970)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Peter J. Fitch* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Steven R. Sosnov,* trial attorney), for the defendant.

Before RAO, FORD, and WATSON, Judges

WATSON, Judge: The imported merchandise involved herein is described on the entry papers as "air-circulating-fans." It was classified as fans under the *eo nomine* provision for fans in item 661.10 of the Tariff Schedules of the United States, as amended, at the rate of 14 per centum ad valorem for fans and blowers and parts thereof.

The importer claims the merchandise is duty free under item 666.00, Tariff Schedules of the United States, as amended, as agricultural and horticultural implements not specially provided for.

The case at bar was submitted on stipulation, the pertinent parts of which follow:

1. That the record in *Eddyco, Inc., etc.* v. *United States,* protests 66/59599 and 66/67660 (previously abandoned by plaintiff) may be incorporated herein.

2. That the entry invoice and all other documents transmitted by the United States customs service to the court may be deemed in evidence.

3. That, in accordance with the ruling by Chief Judge Rao at R. 27–28 in the incorporated case, defendant shall have the right in its brief herein to incorporate any arguments which it cares to present with respect to defendant's exhibit B for identification in the incorporated case.

4. That the instant case may be submitted on this stipulation and on the record in the incorporated case.

The record in the instant case consists of the incorporated record in the previously abandoned case of *Eddyco, Inc.* v. *United States,* protests 66/59599 and 66/67660.

The record in the incorporated case consists of the oral testimony of one witness and two exhibits for the plaintiff, and one exhibit for the defendant. The official papers are deemed in evidence, as agreed by counsel in their stipulation. Since no oral testimony or numbered exhibits were offered in the case at bar, except defendant's exhibit B aforementioned, we refer to the same exhibits and record of the incorporated case as if they had been presented directly herein.

The issue presented is whether the imported merchandise was properly classified under the *eo nomine* provision for fans under item 661.10 of the Tariff Schedules of the United States, or whether it should have been classified as horticultural implements, not specially

provided for, free of duty under item 666.00 of the Tariff Schedules of the United States, as claimed by the plaintiffs.

The record in the case at bar now consists of the incorporated record and the following exhibits:

*Plaintiffs' illustrative exhibit 1*–Leaflet which describes the imported merchandise and its operation.

*Plaintiffs' illustrative exhibit 2*–Photograph of the imported merchandise.

*Defendant's exhibit A*–Literature described by the witness as one of the flyers which it delivers to its dealers and distributors.

*Defendant's exhibit B*–Copy of a letter written in 1964 by the Hon. Philip Nichols, Jr., then Commissioner of Customs, to Hon. Michael Stramiello, Jr., then Appraiser of Merchandise in New York.

Mr. Edward Jednak, president of Eddyco, Inc., for six years, had testified for the plaintiff in the incorporated case that his company sold equipment to horticultural dealers, and that he has been in this type of business for sixteen years. He is also president of Jednak Floral Company in charge of importations, is familiar with the articles at bar, having imported them for approximately seven years, and saw them actually used in twenty or more States of the United States, mostly in the North.

He called the article a combination heater-fan which functions by creating swirl, a new type of evenness in air movement, longitudinal and vertical, throughout a greenhouse regardless of the heat source. An ordinary ceiling fan he stated would have a slight effect, but not the drawing down effect. The ordinary fan would create the downward movement of heat, but would not be strong enough to hold it down. It would not cause a gentle rolling of the air as do the blades of the imported item.

The witness continued: the blades of the imported article differ from those of an ordinary fan. They are all set uniformly at approximately a 90-degree angle to the pitch of the greenhouse. These blades are adjustable, but not as to the rapidity with which they revolve. "Dead air" is non-moving air. When you have "dead air," the humidity surrounding that air is extremely high, allowing plant diseases to set in very, very rapidly.

The only place, other than hothouses or greenhouses, where the witness has seen these articles used is in storage of rose plants, to even out the temperature and get rid of the dead spots. They are not conducive to use in the home, because they require height. Aside from the two uses mentioned, the witness never saw any other use.

These articles are run by a motor, composed of a stator and a capacitor. These are electrical features of the article. The original fans imported were two-speed, but the later models were simplified to one-speed to prevent greenhouse men from burning up one or two fans by interchanging the wires from one to the other. A clixton was added, said clixton being a thermal cut off, so a rise in heat due to wrong wiring would cause an automatic shut off. The only difference between those articles described as 220 volt, 60 per, 1-speed with clixton, and 110 volt, 60 per, 1-speed with clixton, and 220 volt, 1-phase, 60 per, 1-speed with clixton, is the type of electrical power to be used.

P.V.K. ventilators are the same merchandise as is involved in this case. Any fan which is described as P.V.K. would be the same as the fans herein, and cannot be operated otherwise than electrically. Eddyco sells to dealers, who, in turn, sell to the greenhouses. Jednak Company sells to greenhouses and nurseries.

These articles are not blowers in the strict sense of the word, but are air movers, created specifically by heating engineers in Holland to move heat.

The witness owns one-third of a corporation in Little Rock, Arkansas, which, in turn, owns greenhouses. All their greenhouses use these articles continuously. When they do not wish to bring down the heat [which is at the top of the greenhouse], as when the air-conditioners are on, the ventilators are shut off.

Prior to the development of these articles, attempts were made to use regular fans, but all they did was move the air in one direction, a condition which will dry out the soil in one section of the greenhouse, but not in another. Such a condition could create problems in watering. Only one size of fan was imported.

On cross-examination, the witness testified as follows:

The imported merchandise does not have any heating element in itself. It is a device which is energized so that it circulates air with the prime thought to circulate heat. The heat is in the air, and there are innumerable sources of heat. The imported article does create an artificial current of air.

The final exchange between the witness and counsel for the defendant was as follows:

Q. On direct examination, you consistently referred to this as a fan. Is Defendant's Exhibit A also called a fan?—A. Yes, in answer to your question as such, yes.

On redirect examination, the witness testified as follows:

In referring to it as a fan, it was for want of a better word. The article changes the temperature of the greenhouse, or parts thereof, by

moving heat. In his opinion, 80 percent of these articles are used in Northern States, because of the cold temperatures there.

These articles would not be used in an ordinary room, because such a room would be too low and confined, and the blades would have to be kept out of reach. This "fan" is surprisingly quiet, and has a one-sixth horsepower motor which is extremely efficient. Its only use known to the witness is in the hothouse.

The following also are pertinent portions of Mr. Jednak's testimony:

Q. What is causing the rolling of the air?—A. The movement of the blades of the fan.

Q. Which fan are you talking about?—A. I am talking about the fan we are importing * * *. [While Judge Ford, in asking a question, referred to the imported article as this particular piece of merchandise rather than in the tariff term, the witness replied: "Well, the blades on this fan—there are 9 blades on this fan, to start with, and they are set in this manner to create this air pattern."]

The following significant testimony also took place at the hearing:

JUDGE BECKWORTH: As you described your fan, would you go so far as to say it distributes air?

THE WITNESS: Yes, sir, I would have to say that it distributes air. As I say, our primary thought is to distribute the heat, and you cannot distribute heat without the air.

 *  *  *  *  *  *  *

Q. As to the imported merchandise, Mr. Jednak, does it have any heating element in itself?—A. No.

Q. Is this a device which is waved or circulated, rotated to cause a circulation of the air?—A. It is a device which is energized so that it circulates with the prime thought and reason that it wants to circulate heat.

Q. Heat is in the air?—A. Heat is in the air. There are innumerable sources of heat.

Q. Does it create an artificial current of air?—A. Yes, it does.

It is significant that on questioning, when the court referred to "the merchandise" identified as exhibits 1 and 2 and to "the merchandise before the Court" the witness each time called the importations *fans*.

Defendant's exhibit A lists the importer as the sole North American distributor. It is a flyer which Eddyco has printed up to give to their dealers, who, in turn, can print their name on the literature and give it to their customers. There can be no doubt after reading this advertisement prepared by the importer, that the involved article describes a type of fan. For example, the vanes protruding from the hub are described as: "Fan Blades Adjustable for Various Greenhouse Situa-

tions." The pricing of the merchandise is: "1–5 Fans—$80.00 Each; 6–25 Fans—$77.50 Each \* \* \*." It is specifically termed a "Greenhouse Fan," and it is stated to be: "The Finest and Most Economical Air Circulation Equipment."

Significantly, while exhibit A states that the imported article "Distributes Heat Uniformly and Saves Fuel," it also "Provides Maximum Air Cooling in Summer." Hence, it circulates whatever air is in the greenhouse which, according to the lexicographers, is what a fan is supposed to do.

The rule on determining the common meaning of a tariff term is set forth clearly in *United States* v. *John B. Stetson Co.*, 21 CCPA 3, 9, T.D. 46319 (1933):

> \* \* \* The common meaning to be attached to a term or word used by the Congress in a provision of a tariff act is a matter to be determined by the court having the same under consideration. In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court. *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T.D. 42219; *United States* v. *Felsenthal*, 16 Ct. Cust. Appls. 15, T.D. 42713; *United States* v. *May Department Stores*, 16 Ct. Cust. Appls. 353, T.D. 43090; *United States* v. *Moscini*, 19 C.C.P.A. (Customs) 144, T.D. 45261. This is true whether the court be *nisi prius* or appellate.

The importation comes within the scope of the term "fan" used by accepted lexicographers. *Webster's Third New International Dictionary* (1963), p. 821, states:

> *fan. n.* \* \* \* *2:* an instrument or device for producing an artificial current of air (as by a wafting or revolving motion of a broad surface): as \* \* \* *b.*: any revolving vane used for producing a current of air (as in blowing a fire or ventilating a room or for governing rapid rotary motion by the resistance of the air).

*Audels New Mechanical Dictionary* (1960), p. 273, states:

> *Fan.* – A rotary wheel like arrangement of vanes and hub combined with a suitable casing or conduit, moving volumes of air for purposes of ventilation, furnace draught, etc.

1 *Knight's American Mechanical Dictionary* (1876), p. 824, states:

> *Fan.* 1. A device waved or rotated to cause a circulation of air.

The greenhouse fan in issue is intended to produce an artificial current of air, consists of a rotary wheel-like arrangement of vanes, and is rotated to cause a circulation of air.

The plaintiffs herein also argue, that the article in controversy is not a fan but is "more than" a fan, which thereby would remove it from the *eo nomine* provision for fans under item 661.10 TSUS.

It is of course elementary in customs jurisprudence that under the presumption of correctness the collector is presumed to have found every fact necessary to support his classification of the article herein as a fan. (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75 (1939).) It is also elementary that the plaintiffs must prove the classification erroneous and their claimed classification the proper one, in this phase of the case that the article is more than a fan, is therefore outside *eo nomine* classification, and is includible in item 666.00 of the Tariff Schedules of the United States as a horticultural implement, not specially provided for.

The plaintiffs cite for support of their contention that the article herein is "more than" a fan, the case of *Compania Azucarera Del Camuy, Inc.* v. *United States*, 45 CCPA 4, C.A.D. 664 (1957). In that case the court held that certain sugar cane slings made of chain having a pulley element at one end and a hook at the other end with latches, locks, and a housing, were not properly classifiable under the *eo nomine* provision for "chains of iron or steel," being much more than chains, and were shown to be agricultural implements, free of duty under the broad and liberal construction Congress evidently accorded agricultural pursuits. The court also evidently found the issue close under a competing paragraph, stating that "when an issue stands at an even balance, the importer should prevail," continuing, that in order for an article to be taken out of the agricultural implement paragraph by other provisions it is necessary that it be specified by name in some other tariff provision.

Since in the case at bar "fans" are specified by name in item 661.10 of the Tariff Schedules of the United States, where they were classified, we do not consider the issue on this point close, nor the *Compania Azucarera* case, *supra*, apposite.

The subject merchandise at bar, in this court's opinion, is some kind of a fan. The testimony is clear that it functions like a fan. It moves or impels air, which is the purpose of a fan. The testimony of the plaintiffs' own witness, the exhibits, the official papers all support the fact that this is a fan.

The basic rule governing designations of an *eo nomine* character is set forth in the case of *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, 470, T.D. 47464 (1935) :

> The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or adminis-

trative practice to the contrary, and without proof of commercial designation, will include all forms of said article. * * *

The plaintiffs' argument in their brief apparently relies strongly on the case of *Jednak Floral Co. and J. E. Bernard & Co., Inc.* v. *United States*, 52 Cust. Ct. 353, Abstract 68556 (1964).

In the *Jednak* case it was stipulated orally, between counsel that the articles, described on the invoice as special air-circulating fans, were more than fans, that they were combination fans and heaters used for commercial purposes in hothouses to heat and circulate the air. They were held dutiable as metal articles having as an essential feature an electrical element or device. The plaintiffs' claim was accordingly sustained. Later, however, on further importations of the same article, and closer examination, the true nature of the article was ascertained. It became apparent that the stipulation on which that decision was based had been entered into on the misconception that the article was more than a fan. The parties do not dispute that the article at bar is the same as that in the *Jednak* case.

However, in the case at bar, the plaintiffs gain little, if any, support from the *Jednak Floral Co.* case, *supra*. In *General Systems Service, Inc.* v. *United States*, 42 Cust. Ct. 215, 218, C.D. 2089 (1959), the court, speaking of an incorporated record and the weight of a decision therein, stated at page 219:

> * * * Whatever effect the previous case may have on the present case must come from the evidence adduced therein and not from any reasoning followed in the decision. * * *

In *Adolphe Hurst & Co., Inc.* v. *United States*, 33 CCPA 96, C.A.D. 322 (1946), the court stated that where an earlier decision was erroneous, the error should not be perpetuated by following it. The better course rests in reevaluation, not mere perpetuation. *William Adams, Inc.* v. *United States*, 56 Cust. Ct. 429, C.D. 2670 (1966).

Defendant's exhibit B, in our opinion, is admissible in evidence as an official document, coming from proper custody and is probative of the situation at bar. Exhibit B is set forth:

Dear Mr. Stramiello:

There is enclosed a copy of a letter, addressed to the Assistant to the Chief Counsel, regarding the stipulation of Protest 63/6372, covering certain greenhouse fans.

In your report of March 25, 1964, you indicate that in 1960 you issued a ruling on Form A–73, addressed to the importer in the protested case. This decision held that a "ventilating electric motor fan to be imported from Holland as described in the enclosed leaflet" was classifiable under paragraph 353 at the rate of 13¾ percent ad valorem as an article having as an essential feature an electrical element or device. This opinion was based upon

the assumption that the merchandise was a combination heater-fan.

In 1961, when the item was actually examined, it was found to be a fan only, so it was advisorily classified as a "fan" under paragraph 353 at the rate of 17½ percent ad valorem. However, three entries made in 1962 were entered, advisorily classified, and liquidated under paragraph 353 at the 13¾ percent rate.

In view of the circumstances present, the Bureau is not objecting to a stipulation of this protest and liquidation at the 13¾ percent rate in the case of entries made before August 31, 1963. However, under the Tariff Schedules of the United States, effective as to entries made on or after August 31, 1963, such merchandise shall be classified as Fans under item 661.10, with duty at the column 1 rate of 14 percent ad valorem.

Sincerely yours,
[signed]
Philip Nichols, Jr.
Commissioner of Customs

The case of *Jednak Floral Co.*, *supra*, is not a limitation or a contrary judicial decision such as would destroy the *eo nomine* character of item 661.10 TSUS. It is apparent in the *Jednak* case that the court accepted as accurate the stipulated fact that the articles were "combination fans and heaters," and was bound by such fact.* (See *United States* v. *Meadows Wye & Co.*, *Inc.*, 15 Ct. Cust. Appls. 451, T.D. 42643 (1928).)

Testimony in the case at bar shows that the instant merchandise has no heating element. It is not a combination article, is not more than a fan, but is only a fan for the circulation of air, whether hot or cold.

As to plaintiffs' claim under item 666.00, *supra*, as agricultural and horticultural implements, not specially provided for, we note that schedule 6, part 4, subpart C headnote 1 provides in pertinent part: "The provisions of item 666.00 for 'agricultural and horticultural implements not specially provided for' do not apply * * * to any of the articles specially provided for elsewhere in the tariff schedules * * *."

Quite apart from exhibit B, but on subsequent further examination of the exhibits portraying the imported article, on the official papers in evidence, on the testimony of Mr. Jednak, and based on the entire record, we are satisfied that the article at bar is a fan, which under the principle of law enunciated in the *Nootka Packing Co.*, case, *supra*, is classifiable under item 661.10 TSUS, *eo nomine*.

The protest is overruled.

Judgment will be rendered accordingly.

---

*The defendant concedes in its instant brief that it was under the impression that the articles were "combination fans and heaters" at the time of entering into that stipulation.