(C.D. 3986)

Poland Brothers, Inc. *v.* United States

United States Customs Court, First Division

(Decided April 2, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Robert Richardson* and *Frederick L. Ikenson,* trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The merchandise in this case consists of vinyl garment bags imported from Japan in 1966. It has been classified for customs purposes as "household articles not specially provided for" under item 772.15 of the Tariff Schedules of the United States and was consequently assessed with duty at 17 per centum ad valorem. Plaintiff protested and claims that the merchandise is properly classifiable under item 772.20 of the tariff schedules which covers "[c]ontainers of rubber or plastics, with or without their closures, chiefly used for the packing, transporting, or marketing of merchandise," and therefore dutiable at 15 per centum ad valorem.

At the trial, counsel for plaintiff abandoned all claims other than that the controverted merchandise is classifiable under item 772.20 of the tariff schedules. Counsel for the defendant, at the trial, stated that "in the event that the Court should find that the classification as assessed, under 772.15, is not proper, the government asserts an alternative claim, that the merchandise is properly classifiable under item 706.60, under the caption, 'Luggage and handbags * * * of other materials: other,' at the rate of 20 per centum ad valorem."

The following, therefore, are the pertinent or competing provisions of the Tariff Schedules of the United States:

"Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics:

| | | |
|---|---|---|
| * * * * * * * | | |
| 772.15 | Other _____ | 17% ad val." |
| 772.20 | "Containers, of rubber or plastics, with or without their closures, chiefly used for the packing, transporting, or marketing of merchandise_____ | 15% ad val." |

"Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:

\*  \*  \*  \*  \*  \*  \*

Of other materials:

706.60        Other _____ 20% ad val."

In addition to the official papers and certain exhibits, the record in this case consists of the testimony of one witness for the plaintiff and three for the defendant. In view of their importance, specific reference will be made to the exhibits of the parties.

Plaintiff's exhibit 1 is a sample of the merchandise described on the customs invoice as "vinyl garment bags with windows – plain". It is 24" x 40" in size with a 38" aluminum zipper, chain pull attached to the zipper, and a small circular transparent window. Plaintiff's exhibit 2, also a sample of the imported merchandise, is invoiced "vinyl garment bags with windows – alligator". It is in all respects the same as exhibit 1, with the exception that the bag is not smooth but is embossed with an imitation alligator skin. Plaintiff's illustrative exhibit 3 consists of three garment bags, the same as exhibits 1 and 2, except that they each contain the name of a retail store which has been stamped onto the bag after importation. Since the bags are not sold by the plaintiff in their imported condition, this collective exhibit shows the condition of the bags when they are sold by the plaintiff to its customers.

Defendant's illustrative exhibit A consists of a vinyl garment bag with the words "Oxxford [sic] Clothes Hutzler's Baltimore" stamped upon it. Defendant's illustrative exhibit B is a vinyl garment bag which is sold by Hutzler's Department Store. In addition to a transparent plastic wrapping for the bag, it contains a separate label which bears a picture of the garment bag, and among other things, there appears the following language: "Men's Suit Length Trip-Pac Auto Bag For Train, Plane, Auto & Closet".

Plaintiff's witness, Mr. Leon S. Frame who is its vice-president and manager, testified that the plaintiff is engaged in the sale of packaging supplies such as paper bags, boxes, and garment bags to retail stores. He has sold and has supervised the sales of the garment bags in issue, and has seen them used. He testified that they are "used as containers for delivery of garments by retail stores." The stores that use these garment bags are retail stores that sell men's suits.

Mr. Frame enumerated the following features or characteristics which made them particularly suitable as garment bags: "they are protective to the garment \* \* \* against weather, against moisture, rain, dust"; the "zipper \* \* \* makes the garment inside accessible";

they have "a little window, so that the contents can be identified"; they have "a convenient aperture at the top, so that a hanger, which acts as a carrier, can be utilized, and * * * tends to seal the bag". Mr. Frame added that "above all, the retailer likes to deliver in this bag because he can deliver a suit freshly pressed." Furthermore, since the name of the store is stamped on the bag "[i]t also has publicity value to the store."

Mr. Frame distinguished the vinyl garment bags in question from the heat-sealed, throw-away polyethylene bags used by dry cleaning stores, and stated that whereas the latter cost about five cents a bag, those under protest sell for fifty to sixty cents each. He explained the difference in cost by indicating that the garment bags in issue are made of a heavy vinyl, are sewed, have a zipper, and are "reused by the ultimate customer of our customer."

It is clear from Mr. Frame's testimony that the plaintiff does not sell the garment bags in their condition as imported. After importation, the bags are stamped with the name of the retail store to which they have been sold, and all orders received by plaintiff require that the name of the store be stamped onto each bag. The stores that purchase these bags from plaintiff do not sell them to their customers. Mr. Frame testified that the retail store gives the bag away without charge to a customer upon the purchase of a garment, i.e., a suit. In words of the witness, the stores "deliver the garment in it." Although Mr. Frame did not know whether stores such as Woolworth's or Kresge's sold such bags, he testified that better quality garment bags are sold for a dollar and a half or two dollars.

In cross-examination, Mr. Frame testified that stores in the lower price line do not use the garment bags in issue. The "better quality retailer", i.e., "the retailer that carries the higher price line", of suits "generally gives them with each delivery."

Mr. George W. Foy, defendant's first witness, is the superintendent of the receiving, marketing, and distribution of merchandise for Hutzler Bros. Company, a retail department store. He stated that he had occasion to inspect the containers in which garments were shipped to Hutzler Bros. from wholesalers, and that he had never seen bags such as those in issue used as containers. According to Mr. Foy's testimony, garments are shipped to Hutzler Bros. from the wholesaler in flat or square corrugated cardboard cartons. Garment bags similar to those in issue are given away without extra charge to Hutzler Bros. customers upon the purchase of an Oxford suit, but not with the purchase of a cheaper suit. He also testified that he had seen garment bags similar to those in issue, and that they were purchased by various departments in the store, such as the luggage, notions and budget departments.

Mr. Abram Blumenthal, defendant's second witness, is the owner of Universal Paper Company, a wholesale distributor of "products related to paper and packaging and construction industries." His company imported products identical to the bags in issue, and sold them to retail men's clothing stores, clothing manufacturers, and wholesalers. Ninety eight per cent of such sales were to retailers and two per cent to wholesalers and manufacturers. Other than retail establishments he had seen these garment bags carried by consumers in cars and airports.

Defendant's third witness, Mr. Paul Miller, a luggage and accessory buyer for Hutzler Bros., also was familiar with articles similar to the controverted garment bags. He described the bag as follows:

"It's a traveling bag—it's a bag of plastic, made of plastic, that could be used for either storage or traveling in a car, or plane, or any type of traveling like that. It has a full length zipper. You can put a men's [sic] suit in it."

There is no doubt from the testimony of Mr. Miller that the bags in issue or similar bags are used "for traveling" or for purposes of storage.

The court may state at the outset that there is no essential conflict in the testimony of all of the witnesses. They each described and stated the various uses of the garment bags introduced by the plaintiff, being the merchandise in issue, and the bags introduced by the defendant. As in many other cases involving the proper customs classification of imported articles, a sample of the controverted merchandise is a potent witness. *United States* v. *Abercrombie & Fitch Co.*, 20 CCPA 267, 270, T.D. 46060 (1932); *Marshall Field & Co.* v. *United States*, 45 CCPA 72, 81, C.A.D. 676 (1958). See also *Ace Importing Co., Inc.* v. *United States*, 44 Cust. Ct. 468, 469, Abstract 64185 (1960).

No purpose will be served by setting forth in detail all of the similarities of the bags and their elements of difference. Although plaintiff, in an effort to establish dissimilarity, stresses an alleged discrepancy in cost or price, even this difference will vanish upon close examination. Plaintiff's exhibits are sold at wholesale in quantities from 100 to 5000 at fifty to sixty cents each. Defendant's exhibit B contains a price tag and presumably is sold at retail for one dollar. Although there was testimony that there are high quality garment bags that sell at retail for $1.50 or $2.00 each, an examination of the exhibits will not reveal any noticeable difference in quality among them. As a result of a careful examination, the court finds that all of the exhibits are vinyl plastic garment bags similar in all essential respects, and of the same kind or class.

It is plaintiff's contention that the controverted garment bags are containers chiefly used for the packing, transporting or marketing of wearing apparel. In support of its contention, it has set forth, in its brief, various lexicographic definitions of the verbs "to pack", "to transport", "to market", and the noun "container". It asserts that the garment bags "have been established as containers chiefly used for packing, transporting or marketing wearing apparel as those terms are commonly understood."

Defendant, on the other hand, emphasizes the context in which the previous words are used in the pertinent provision of the tariff schedules, and asserts that the containers referred to in item 772.20 of the tariff schedules are those "chiefly used for packing, transporting or marketing of merchandise". Although the plaintiff has not done so, the defendant has set forth a quantity of lexicographic definitions of the word "merchandise", and from those definitions, concludes that "to be merchandise, articles must be within the stream of commerce." (Defendant's brief p. 16.)

In passing, it may be noted that the concept of the term "merchandise" was examined in *United States* v. *Mattio et al.*, 17 F. 2d 879 (9th Cir. 1927), wherein the government sought forfeiture of certain jewelry allegedly brought into the United States in violation of the Tariff Act of 1922. Referring to the definition of "merchandise", the court said:

> "But while under this generic definition the term is broad enough to cover every kind of tangible personal property, including the most necessary articles of clothing, whether carried in a trunk or on the person, we find as actually used in the Act its meaning is often restricted to what may be regarded as merchandise in a commercial sense, to the exclusion of 'baggage.' 'personal effects,' and 'articles of personal adornment,' of which specific mention is made as being in classes by themselves, and for which there are special provisions." *Id.* at 880.

Since the garment bags in issue are admittedly of plastic, the question is whether they have been properly classified as "household articles not specially provided for". Clearly, the plaintiff has the burden of rebutting the presumption of correctness that attaches to the collector's classification. *F. H. Kaysing* v. *United States*, 49 CCPA 69, 71, C.A.D. 798 (1962) ; *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, 158, C.A.D. 77 (1939). In order to prevail, the plaintiff must establish not only that the collector's classification is erroneous, but also that the claimed classification is correct. This dual burden of the plaintiff has been enunciated and applied in countless cases involving the proper classification of imported merchandise. *United States* v. *H. V. Albrecht et al.*, 27 CCPA 112, 117, C.A.D. 71

(1939) ; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 CCPA 150, 157, C.A.D. 227 (1943) ; *W. T. Grant Company* v. *United States*, 38 CCPA 57, 60, C.A.D. 440 (1950).

After quoting from *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735 (1960), the Court of Customs and Patent Appeals in *United States* v. *National Starch Products, Inc.*, 50 CCPA 1, 5, C.A.D. 809 (1962), made the following statement which pertains to the dual burden of plaintiff in a classification case:

> "Unless there is substantial evidence in the record to establish the propriety of the protestant's asserted classification of the imported merchandise, the protest must be overruled and it is unnecessary to consider whether or not the collector's classification is wrong. [Cases cited.]"

In the case at bar, it cannot be said that the plaintiff has borne its burden of proof. The record reveals a variety of uses for the garment bags. Even if one were to concede that a purchaser of a suit will receive such a bag without charge from the retailer, it cannot be disputed that the bag is reusable. The testimony leaves no doubt that it is designed and constructed in such a manner as to be capable of being used even after the delivery or transportation of the suit to the purchaser's home. That one such use is for storage in the home also cannot be denied.

It is also noteworthy that although the bag is used as a "container" for "packing" and "transporting" a garment to the home of the purchaser, it can also be reused many times thereafter whether for storage or for travel. Indeed, the defendant has submitted that the court may take judicial notice of the fact that garment bags, such as those at bar, are used in closets in the home. Regardless of whether the court would accede to such a request, it is clear that despite the evidence of various uses, plaintiff did not prove that the articles at bar are in chief use as it contends. The claimed classification is one based upon "chief use", and, in a case where the claimed classification is predicated upon use, plaintiff must show the use "which exceeds all other uses (if any) combined". General Interpretative Rule 10(e) (i). See *United States* v. *H. V. Albrecht et al.*, 27 CCPA at 116.

In view of such a definition of chief use, there can only be one chief use for an article when chosen from mutually exclusive competing provisions. See *Frank P. Dow & Co. and China Dry Goods Co.* v. *United States*, 46 Cust. Ct. 477, 478, Abstract 65614 (1961) ; *Ace Importing Co., Inc.* v. *United States*, 44 Cust. Ct. 468, 469, Abstract 64185 (1960). Under the circumstances herein, therefore, plaintiff's argument on the

question of relative specificity is inappropriate and does not require further discussion. As stated in *L. Tobert Co., Inc., et al.* v. *United States*, 41 CCPA 161, 164, C.A.D. 544 (1953) :

> "While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact which, in a case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation."

In the *L. Tobert Co.* case, the court added :

> "In other words, we are reluctant to disturb the presumption of correctness attaching to the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification." *Id.* at 164–165.

In the case at bar the plaintiff not only has not established that the garment bags in question were "containers" within the meaning of the claimed provision, but also has not shown that they are not household articles. Furthermore, the statements in its brief under the point heading entitled "Not Household Use" seems to assume that the burden is upon defendant "to establish a household use".

The decision of the court, that the controverted garment bags have been properly classified, is confirmed by certain textual statements found in the Tariff Commission's *Summaries of Trade and Tariff Information*, Schedule 7, Volume 7, T.C. Publication 256. Specifically referring to item 772.15, i.e., "household articles not specially provided for", under which the garment bags in issue were classified, it is stated:

> "Among the variety of heterogeneous articles included * * * are * * * *garment protectors*, and miscellaneous containers except those used for the packing, transporting, or marketing of merchandise." *Id.* at 65. [Emphasis added.]

Since testimony of the witnesses and the examination of the exhibits reveal that the garment bags are indisputably *garment protectors*, the statement in the *Summaries of Trade and Tariff Information* confirms the court's decision that they were covered by the tariff item under protest, and were intended to be excluded from the claimed classification.

In view of the foregoing, the court need not and does not pass upon defendant's alternate claim.

Since the plaintiff has not borne its burden of proof in establishing that the contested classification is erroneous, and that the claimed classification is correct, the protest is hereby overruled. Judgment will issue accordingly.